KAREN P. HEWITT
United States Attorney
YESMIN E. SAIDE
Assistant U.S. Attorney
California State Bar No. 067386
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6755 /(619) 557-7055 (Fax)
Email: yesmin.saide@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1515-BEN |
|---|---|---|
|  | ) |  |
|  | ) | **(Before Magistrate Judge** |
| Plaintiff, | ) | **William McCurine, Jr.)** |
|  | ) |  |
| v. | ) | GOVERNMENT'S <u>EX PARTE</u> MOTION |
|  | ) | FOR PRETRIAL PRODUCTION OF |
|  | ) | DOCUMENTS PURSUANT TO FEDERAL |
|  | ) | RULE OF CRIMINAL PROCEDURE 17(c)(1) |
| WILLIAM WRIGHT, | ) | TOGETHER WITH GOVERNMENT'S |
|  | ) | MEMORANDUM OF POINTS AND |
|  | ) | AUTHORITIES IN SUPPORT OF ITS |
|  | ) | MOTION FOR PRETRIAL PRODUCTION OF |
| Defendant. | ) | DOCUMENTS PURSUANT TO FEDERAL RULE |
|  | ) | OF CRIMINAL PROCEDURE 17(c)(1) |
|  | ) |  |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Yesmin E. Saide, Assistant U.S. Attorney, and hereby files its <u>Ex Parte</u> Motion For Pretrial Production of Documents Pursuant to Federal Rule of Criminal Procedure 17(c)(1) together with Government's Memorandum of Points and Authorities in Support of its <u>Ex Parte</u> Motion for Pretrial Production of Documents Pursuant to Federal Rule of Criminal Procedure 17(c)(1). Said motion is based upon the files and records of this case, together with the memorandum of points and authorities.

I

STATEMENT OF FACTS

On May 9, 2008, a federal grand jury returned a thirteen count indictment against Defendant William Wright (Wright) charging Wright with conspiracy to commit mail and wire fraud (a violation of 18 U.S.C. § 371); mail fraud (a violation of Title 18 U.S.C. § 1341); wire fraud (a violation of 18 U.S.C. § 1343); conspiracy to launder money (a violation of 18 U.S.C. § 1956(h); money laundering promotion (a violation of 18 U.S.C. § 1956 (a)(1)(A)(I); and aiding and abetting (a violation of 18 U.S.C. § 2).

Wright was the lead salesman in an investment fraud scheme that operated out of San Diego, California from October 2002 through October 2003. Wright sold investments for the Rose Fund, LLC (RF LLC), a start-up company formed to solicit investor money to fund loans secured by real property. He also solicited investments for TRF Holdings, Inc. (TRF), a related entity also recently formed to provide "seed money" to capitalize the Rose Fund. Wright targeted as prospective TRF investors individuals whom he had previously solicited for unrelated investment opportunities in a company named Vision Wireless.[1]

In order to make sales, Wright misrepresented to investors, among other things, that: investor funds were safe and would be used to make loans secured by real estate; Wright would receive a 5% sales commission; the RF and TRF businesses were well-established, successful and operated by experienced real estate principals, including Wright; and Wright was an attorney who had invested his own funds. Wright intentionally misled TRF Holdings, Inc. investors into believing that their investments would be used to fund real estate loans rather than provide seed money for the Rose Fund. In addition, Wright concealed from investors that in 1996 he had been previously convicted of mail and wire fraud and that the Securities and Exchange Commission had begun an investigation of the Rose Fund in April 2003.

During the one year that the fraud scheme operated, Wright fraudulently solicited more than $4 million dollars (95% of the total funds raised) from approximately 108 investors. Wright solicited many investors for multiple investments. Although investors were promised that their investments

---

[1]     Vision Wireless was a company that sold used and wholesale parts for cellular phones.

would be used to make secured real estate loans, Wright and his accomplices funded only 16 loans totaling $1.8 million (only approximately 44% of investor funds were used to make real estate loans). Instead, they fraudulently diverted more than $2 million of investor funds to themselves. Wright secretly funneled excessive RF sales commissions of 11% and TRF sales commissions of 28% (totaling $665,000) to bank accounts that he opened in the names of two of his nominee corporations, Who Banging Marketing, Inc. (Who Banging) and YAE, Inc. (YAE).[2]

In late October 2003, the Securities and Exchange Commission (SEC) seized control of the Rose Fund and TRF entities. The SEC and its court-appointed receiver were able to mitigate some investor losses by selling loans and obtaining disgorgement judgments against Wright and others. Nonetheless, the RF and TRF investors lost more than 50% of their original investments. In addition, those TRF investors who also invested in Vision Wireless lost their entire Vision Wireless investments.

Based on the records that the Government obtained pre-indictment during its criminal investigation, Wright deposited more than $647,000 of fraudulently-obtained RF/TRF commissions into his Who Banging and YAE bank accounts, which represented approximately 83% of the total deposits into these two accounts.[3] Wright used funds from his Who Banging and YAE bank accounts to, among other things, pay two Washington Mutual loans used to purchase his luxurious home in Tarzana, California, and a $162,000 Bentley from Desert European Motorcars, Ltd. in Rancho Mirage, California.

The Government's limited records indicate that in 2001 and 2003, Wright obtained two Washington Mutual loans, exceeding $1 million, that he secured with trust deeds on his Tarzana home. Between January and September 2003, during Wright's participation in the RF/TRF fraud schemes, Wright made to Washington Mutual at least 6 payments of approximately $5,000 to $6,000 each from

---

[2] According to the RF Offering memorandum which was given to both RF and TRF investors, Wright's sales commissions could not exceed 5%. Wright did not disclose to investors his excessive sales commissions which were 6% and 22% more than what was represented in the RF offering memorandum. Between on or about October 21, 2002 and September 26, 2003, Wright collected approximately 79 RF and TRF sales commission checks totaling more than $665,000, which represented approximately 15% of all the RF/TRF investor funds.

[3] Wright also deposited more than $108,000 in fraudulently-obtained Vison Wireless commissions into these two bank accounts (approximately 14% of the total deposits). Thus, Wright's commissions from the RF/TRF and Vision Wireless fraud schemes accounted for approximately 93% of the total deposits into his Who Banging and YAE bank accounts.

his Who Banging and YAE bank accounts. Further, in January 2003, Wright withdrew funds from his Who Banging account to make a down payment on the purchase of his Bentley.

By way of this motion, the Government is requesting a court order authorizing the issuance of two Rule 17(c) subpoenas to Washington Mutual and Desert European Motorcars, Ltd. to obtain pre-trial the following records - Wright's Washington Mutual home loan files and mortgage payment records and Desert European Motorcars, Ltd. vehicle purchases and payment records for the time period October 1, 2002 through October 31, 2003. These records are necessary to definitively tie Wright's use of his fraudulently-obtained RF/TRF and VW commissions to the purchase his million dollar home and luxurious car. See Exhibits 1 and 2 which are copies of the proposed subpoenas to Washington Mutual and Desert European Motorcars, Ltd.. (Exhibit 1, the Washington Mutual subpoena, is filed under seal to protect Wright's financial privacy as mandated by General Order No. 514). As further explained, these records are relevant, among other things, to prove that: 1) Wright intentionally used investor funds to support his extravagant life style rather than for their stated purpose - to fund loans secured by real estate; 2) Wright acted with the intent to defraud; and 3) Wright's fraudulent conduct was motivated by his greed and desire for financial gain.

## II

## ARGUMENT

Rule 17(c)(1) states:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

In United States v. Nixon, 418 U.S. 683, 699-700 (1974), the Supreme Court established a four part test that must be satisfied before a trial court requires the pretrial production of documents obtained with a Rule 17(c)(1) subpoena. Under this test, the moving party must prove that:

1) the documents are evidentiary and relevant:

2) the documents are not otherwise procurable reasonably in advance of trial by exercise of due diligence:

| | | |
|---|---|---|
| | 3) | the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and |
| | 4) | the application is made in good faith and is not intended as a general "fishing expedition." |

The <u>Nixon</u> requirements have been characterized as the "three hurdles" of (1) relevancy; (2) admissibility; and (3) specificity. <u>Id.</u> at 700. The court's decision to issue or quash a Rule 17(c) subpoena is discretionary and will not be reversed unless clearly arbitrary or without support in the record. <u>Id.</u> at 702; <u>United States v. MacKey</u>, 647 F.2d 898, 901 (9th Cir. 1981) (court approved Government Rule 17(c) early production subpoena for defendant's diaries and calendars as proof of a conspiracy).

Local Criminal Rule17.1.b sets forth the procedure to be used in this district to obtain the pretrial production of documents obtained with a Rule 17(c)(1) subpoena. Except for good cause, the motions are noticed before the duty magistrate judge. Further, the motions are to be supported by affidavit or declaration establishing the four part <u>Nixon</u> test. A subpoena <u>duces</u> <u>tecum</u> issued under the local rule is returnable to the court. The clerk maintains custody of the documents and makes them available for inspection of the parties and counsel.[4/]

As shown by the Declaration of Internal Revenue Service Special Agent Barry Bolger, the Government has met the <u>Nixon</u> requirements. See Exhibit 3. The subpoenas request the pretrial production of specific, identifiable documents - Wright's Washington Mutual home loan and Desert European Motorcars, Ltd. vehicle purchase records for the limited time period October 1, 2002 through October 31, 2003. - which will evidence Wright's extravagant spending <u>during the same time period</u> that he participated in the RF/TRF (and Vision Wireless) fraud schemes. These records are relevant to and admissible in the Government's case-in-chief as proof that: 1) Wright was an active participant in the fraud; 2) Wright intentionally used investor funds to support his extravagant life style rather than for their stated purpose - to fund loans secured by real state; 2) Wright acted with the intent to fraud; and 3) Wright's fraudulent conduct was motivated by his greed and desire for financial gain. In addition,

---

[4/] The Government is willing to maintain custody, bates stamp, copy and provide the records to the defendant in discovery.

the records will permit the Government to refute Wright's anticipated defenses that his accomplices and the victim investors were responsible for the losses.

Case law clearly establishes that Wright's loan and vehicle purchase records are admissible as business records (Fed. R. Evid. 803(6)) and as proof of the offenses charged in the indictment. Courts have routinely admitted evidence of a defendant's extravagant spending and lavish lifestyle that occurred at the same time as the offense as proof of the defendant's motive, intent, and participation in the crime. <u>United States v. Shelburne</u>, 2008 WL 474094 *1-4 (W.D. Va. Feb. 21, 2008) [in health care fraud case, evidence of defendant's lavish lifestyle (purchases of expensive home, cars, horses, and cruises) demonstrated defendant's motive-greed and furnished part of the context of the crime]; <u>United States v. Powell</u>, 124 F.3d 655, 660-62 (5th Cir. 1997) (evidence of defendant's generous patronage of topless bars and purchase of expensive Cadillac and condominium at the time of the offense admitted in tax evasion trial to show defendant's intent, that defendant's motive was to support his extravagant lifestyle, and that defendant could afford to pay his tax bill); <u>United States v. Meling</u>, 47 F.3d 1546, 1557 (9th Cir. 1995) (defendant's purchase of expensive firearm, which added to his substantial debt and emptied his checking account, relevant to his motive of greed); <u>United States v. Hughes</u>, 766 F.2d 875, 878 (5th Cir.1985) (evidence of large expenditures admissible to show motive to commit tax fraud); <u>United States v. Feldman</u>, 788 F.2d 544, 557 (9th Cir.1986) (evidence that tends to show that a defendant is living beyond his means is of probative value in a case involving a crime resulting in financial gain); <u>United States v. Kessi</u>, 868 F.2d 1097, 1106-07 (9th Cir. 1989) (evidence of wealth and lifestyle admissible in rebuttal to show defendant was a knowing participant in fraud scheme and to refute defense of post-traumatic stress syndrome).

The Washington Mutual loan and vehicle purchase records are not otherwise reasonably procurable in advance of trial by the exercise of due diligence. Because of privacy concerns, Washington Mutual and Desert European Motorcars, Ltd. will not voluntarily disclose to the Government the defendant's records. The Government is legally precluded from issuing post-indictment grand jury subpoenas for the production of these records. And the use of numerous, lengthy search warrants is inefficient, impractical and a misuse of the Court's time and resources where the pretrial production may be procured with a Rule 17(c) subpoena.

1     The Government cannot properly prepare for trial without the early production of these records As shown by the declaration of IRS Special Agent Barry Bolger, Agent Bolger will have to analyze the transactions once the records are obtained. Given the number of Who Banging, YAE, Washington Mutual, and Desert European Motorcars, Ltd. records, pursuant to Fed. R. Evid. 1006, Agent Bolger will have to prepare summaries and charts to organize the information for a clear presentation to the jury. His financial analysis may also require the issuance of follow-up subpoenas for additional records from these businesses and other third parties which will inevitably result in further delay. Therefore, the Government's failure to obtain an early production of these records is likely to cause an unreasonable delay in the trial. See Exhibit 3.

    Finally, the Government's application is made in good faith and is not intended for the purpose of general discovery. The Government has limited its subpoena requests to records relating to Wright's known purchases and payments to Washington Mutual and Desert European Motorcars, Ltd. that he made with fraud proceeds during the same time that he participated in the RF/TRF and VW fraud schemes.

### III

### CONCLUSION

    For the foregoing reasons, the Government respectfully requests that this Court order the issuance of the attached Rule 17(c) subpoenas which will require Washington Mutual and Desert European Motorcars, Ltd. to return the requested documents to this Court on September 23, 2008 at 9:30 a.m. The Government has emailed to the Court and defense counsel a proposed order authorizing the issuance of the subpoenas.

DATED: August 28, 2008.                    Respectfully submitted,

                                                    KAREN P. HEWITT
                                                  United States Attorney

                                                  s/ YESMIN E. SAIDE
                                                  Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff<br><br>              v.<br><br>WILLIAM WRIGHT,<br><br>                    Defendant. | Case No. 08CR1515-BEN<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

    I, Yesmin E. Saide, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of: GOVERNMENT'S <u>EX PARTE</u> MOTION FOR PRETRIAL PRODUCTION OF DOCUMENTS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 17(c)(1) TOGETHER WITH GOVERNMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PRETRIAL PRODUCTION OF DOCUMENTS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 17(c)(1) on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies him:

    Stanley H. Rozanski, Esq. - Email: shresq@aol.com

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on August 28, 2008.

                                      s/ YESMIN E. SAIDE